.UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TAMMI RENE BURTON,

                    Plaintiff,                    No. 11-cv-12783
                                                  Hon. Gerald E. Rosen

vs.


KROGER CORPORATION and
KROGER CORPORATION OF
MICHIGAN,

                    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

       Plaintiff Tammi Rene Burton filed this suit against her former employer in Wayne

County Circuit Court on March 3, 2011.  Defendants Kroger Corporation and Kroger

Corporation of Michigan (collectively, "Kroger") removed the case to this Court on June

28, 2011.  On December 16, 2011, Kroger moved for summary judgment.  Having

reviewed the parties' briefs and the record, the Court finds that the pertinent allegations

and legal arguments are sufficiently addressed in these materials and that oral argument

would not assist in the resolution of this motion.  Accordingly, the Court will decide

Defendants' motion "on the briefs."  *See* L.R. 7.1(f)(2).  The Court's opinion and order is

set forth below.

## II. FACTUAL BACKGROUND

Tammi Rene Burton ("Burton") is a black female who has worked as a cashier for nearly thirty years. She began working as a cashier for Farmer Jack, a Detroit-based supermarket chain. However, in 2007, Farmer Jack began to wind down operations. A number of Farmer Jack locations were purchased by Kroger, a competing grocer. Among the locations bought by Kroger was store number 456, the store where Burton worked as a cashier. Along with her co-workers, Burton applied for and received a part-time job with Kroger as part of the store's transition. Kroger did not guarantee full-time employment to any former Farmer Jack employees. Nevertheless, Kroger promoted Barbara Litnianski, a white cashier, to full-time status shortly after store number 456 opened. Kroger filled other full-time positions with Kroger employees from other stores.

Kroger employees belong to a union, and -- per a letter of understanding between Kroger and the union -- all former Farmer Jack employees hired by Kroger started with the same seniority date, June 20, 2007. Seniority dates are relevant for a variety of purposes, including scheduling and promotional considerations. Kroger employees' terms of employment are governed by a Collective Bargaining Agreement ("CBA"). In addition to the CBA, Kroger maintains an employee handbook that all employees receive. The handbook contains substantive and procedural information about employee conduct, discipline, and other company policies. One portion of the handbook governing employee conduct includes a list of immediately dischargeable offenses. The fifth entry in that list is "[t]hreatening, intimidating, coercing, or interfering with employees, supervisors, or customers." Burton received an employee handbook in 2008.

2

At around age twenty-six, Burton was diagnosed with bipolar disorder.  To treat her condition, Burton meets with a psychiatrist and is prescribed medications to help manage her symptoms.  Despite regular treatment, Burton has had to request medical leave multiple times during her employment with Farmer Jack and Kroger.  Burton would request medical leave when the stress of her work environment became too much to bear.  Burton was granted medical leave each time she requested it, and she returned to her job with no questions asked at the end of each leave period.

In January 2010, Burton received her first disciplinary warning from Kroger.  Kroger issued a "Significant Incident Reminder" for rudeness to a customer.  According to the document, a customer alleged that Burton had snatched keys from her hands and exhibited a rude attitude.  One week after this infraction, Burton was issued another disciplinary notice after violating Kroger's rule against threatening co-workers.  One of Burton's co-workers alleged that Burton threatened to slap him.  Burton was suspended pending an investigation into the incident.  Two witnesses corroborated that Burton yelled at a co-worker and threatened to slap him.  Burton filed a grievance over her suspension and, during the grievance procedure, Kroger offered to re-instate Burton without back pay, subject to a Last Chance Agreement.  Burton signed the Last Chance Agreement, which stipulated the following: (1) Burton took sole responsibility for her actions, (2) Burton agreed to enroll in anger management counseling, and (3) Burton acknowledged that a similar incident would result in her immediate termination.  Kroger also provided a copy of Kroger's anti-harassment policy, which Burton acknowledged receiving.

Nevertheless, on April 25, 2010, Burton had an emotional outburst involving co-workers and customers. According to three witnesses, Burton began yelling about supposed mistreatment by her co-workers and repeatedly stated her belief that she had seniority relative to her co-workers. When one colleague walked by, Burton threatened to have her husband come to the store and "take care of" the individual. By the time a separate associate had gone to the service desk to report Burton's outburst, a customer had already arrived to complain about Burton's behavior.

The store's manager came to the registers and witnessed Burton's shouting. Seeing that Burton was upset, the manager had Burton come to her office to investigate further. Burton made a number of accusations about her co-workers conduct towards her, and the manager sent her home. The next day, Kroger suspended Burton pending an investigation. On April 30, 2010, Kroger notified Burton that she was being terminated for violating Kroger's employee policies and her Last Chance Agreement. Burton's union filed a grievance over the termination, which was denied at each level of internal review. The union thereafter declined to take the grievance to arbitration. On June 7, 2010, Burton filed a discrimination claim with the Michigan Department of Civil Rights based on her termination. Burton eventually received a notice from the Equal Employment Opportunity Commission informing her of the right to file suit. This case followed.

4

# III. ANALYSIS

## A.    Applicable Standards

Rule 12(b)(6) authorizes the Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted."  The Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).  To withstand dismissal, however, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The factual allegations in the complaint, accepted as true, "must be enough to raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the [Court] of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks and citations omitted).

5

In deciding a motion brought under Rule 56, the Court views the evidence in the light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A)-(B). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2). A material fact is genuinely disputed only when there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 298 (6th Cir. 2008). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## B.     Burton's Discrimination Claims

Burton's complaint contains multiple discrimination claims arising under the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101-37.2804. Essentially, Burton alleges that her race and sex played a role in (1) Kroger's failure to promote her in 2007, (2) Kroger's failure to schedule her for a number of hours comparable to a white co-worker, and (3) her termination. For the reasons that follow, the Court will dismiss Burton's failure to promote claim as time barred; the Court will grant summary judgment on Burton's scheduling claim for failing to establish a *prima facie* case of discrimination;

and the Court will grant summary judgment on Burton's termination claim for failure to establish the requisite discriminatory pretext.

Discrimination claims under the Elliott-Larsen Civil Rights Act follow the same three-step burden-shifting analysis used by courts considering discrimination claims arising under federal law. *Ayers-Jennings v. Fred's Inc.*, No. 10–6228, 2012 WL 432273, at *3 (6th Cir. Feb. 13, 2012). First, Burton must establish a *prima facie* case for discrimination. *Id.* If successful, the burden shifts to Kroger to "articulate a legitimate, nondiscriminatory reason" for the conduct complained of. *Id.* If Kroger does so, Burton must "show that the proffered reason is actually a pretext for unlawful discrimination." *Id.*

The first burden, establishing a *prima facie* case, belongs to Burton. "To establish a rebuttable *prima facie* case of discrimination, a plaintiff must present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) her failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination." *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003). "Typically, in order to establish circumstances that give rise to an inference of unlawful discrimination, a plaintiff must present evidence that he or she was treated differently than similarly situated persons of a different class . . . ." *Hermann v. MidMichigan Health*, No. 301048, 2012 WL 205839, at *7 (Mich. Ct. App. Jan. 24, 2012) (citing *Town v. Michigan Bell Telephone Co.*, 568 N.W.2d 64 (1997); *Wilcoxon v. Minn Mining & Mfg Co.*, 597 N.W.2d 250 (1999)).

7

If Burton establishes a *prima facie* case of discrimination, then Kroger must offer a legitimate, nondiscriminatory reason for its action. *Ayers-Jennings v. Fred's Inc.*, No. 10–6228, 2012 WL 432273, at *3 (6th Cir. Feb. 13, 2012) (citation omitted). Assuming Kroger does so, the final burden shifts to Burton, who must show that Kroger's "proffered reason is actually a pretext for unlawful discrimination. [Burton] can carry this burden by showing that the stated reason for termination '(1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action.'" *Id.* (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008)). The statute of limitations for presenting this sort of claim is three years, Mich. Comp. Laws § 600.5805(10), and the Michigan Supreme Court has emphasized that the three-year requirement is strictly applied, *Garg v. Macomb Cnty. Comm. Mental Health Servs.*, 696 N.W.2d 646, 659 (Mich. 2005).

### 1.    Failure to Promote

The Court will dismiss Burton's discriminatory failure to promote claims because they are time barred. Burton admits that Kroger's alleged failure to promote took place in August 2007. (Burton Dep. 59:3-7.) Since the failure to promote was a discrete action, Burton's claims accrued at that time. *Garg*, 696 N.W.2d at 658 ("a 'claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.'") (quoting Mich. Comp. Laws § 600.5827). The applicable statute gave Burton three years to pursue a claim arising out of the failure to promote. Mich. Comp. Laws § 600.5805(10). The statute of limitations thus expired in August 2010. However, Burton did not file her complaint until March 3, 2011, some seven months after

8

the statute of limitations for her claim expired.[1]  Accordingly, dismissal is appropriate.

Fed. R. Civ. P. 12(b)(6).


   2.   Discriminatory Scheduling

   Burton's second discrimination claim alleges that Kroger failed to schedule Burton

for sufficient hours of work as a result of Burton's race.[2]  According to Burton, part-time

employees with identical seniority dates were supposed to be scheduled in alphabetical

order.  (Pl.'s Sec. Am. Compl. ¶ 32; Burton Dep. 172:5-7.)  Burton worked with two

other cashiers: Barbara Litnianski and Norma Johnson, each of whom had the same

seniority date as Burton.  (Pl.'s Sec. Am. Compl. ¶¶ 29-32.)  Because her last name

comes before Litnianski and Johnson in alphabetical order, Burton feels she should have

been scheduled for more hours than her co-workers, whereas the schedule purportedly

went in the following order: (1) Litnianski, (2) Burton, and (3) Johnson.  (Pl.'s Sec. Am.

Compl. ¶ 31.)  Burton thus claims that Litnianski, a white co-worker with identical

---

[1] Burton's response brief cursorily suggests that, having failed to promote her, the
purported discrimination somehow "continued" until the date of her termination on April
26, 2010.  (Pl.'s Resp. Mot. Dismiss 20.)  However, the Michigan Supreme Court has
made abundantly clear that Michigan does not recognize a "continuing violation"
exception to the three-year statute of limitations in § 600.5805(10) because such an
exception is "inconsistent with the language of the statute of limitations[.]"  *Garg v.
Macomb Cnty. Comm. Mental Health Servs.*, 696 N.W.2d 646, 650 (Mich. 2005).

[2] Throughout her complaint and response brief, Burton frames her claims in exceedingly
broad terms.  She infrequently distinguishes between discrimination claims based on race
and those based on sex.  Accordingly, throughout this opinion and order, the Court
construes Burton's claims broadly wherever possible.  However, in this context, the other
employees Burton refers to are both women.  Therefore, Burton cannot assert a sex
discrimination claim in this context.

seniority, received more hours as a result of racial discrimination. As discussed below, Burton's claim fails to establish a *prima facie* case for discrimination because Burton and Litnianski were not similarly situated employees. As such, any purported scheduling disparity between the two does not carry the requisite "inference of unlawful discrimination" necessary to make a *prima facie* showing. *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003).

Under the burden-shifting framework that controls discrimination cases, Burton must first establish a *prima facie* case of discrimination. *Id.* This requires showing four separate elements: "(1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) her failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination." *Id.* The final prong, which requires that Burton demonstrate an inference of unlawful discrimination, is generally met by showing differential treatment compared to other similarly situated employees. *Hermann v. MidMichigan Health*, No. 301048, 2012 WL 205839, at *7 (Mich. Ct. App. Jan. 24, 2012) (citations omitted). Indeed, reducing an employee's work schedule can give rise to an inference of discrimination. *Cf. Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir.1996) ("reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims").

Here, however, Burton's *prima facie* case fails because Burton cannot show circumstances that give rise to an inference of discrimination. Burton disputes her schedule relative to Litnianski's. However, she and Litnianski were not similarly situated

10

employees: Burton was a part-time employee whereas Litnianski was a full-time employee.  (Lazorka Aff. ¶ 11.)  Under the CBA, this distinction meant that Burton and Litnianski would each be entitled to a different number of hours.  (Defs.' Mot. Summ. J. Ex. 2, Art. 24(B).)  In other words, the purported scheduling rule Burton relies upon did not apply between Burton and Litnianski, regardless of their seniority dates.  Even assuming Burton can show the remaining three prongs of a *prima facie* discrimination case, Burton's claim necessarily fails this fourth prong.

In her deposition, Burton repeatedly asserts that she and Litnianski were both part-time employees.  (Burton Dep. 41:22-42:5.)   Similarly, Burton's response brief makes much of the fact that Burton and Litnianski were both initially hired by Kroger as part-time cashiers.  (Pl.'s Resp. Summ. J. 20.)  However, Burton fails to mention that Litnianski was promoted to full-time status some eight to ten weeks after the Kroger store opened in 2007.  (Lazorka Aff. ¶ 11.)  Burton, on the other hand, was never promoted to full-time status.  (Burton Dep. 22:16-19.)  Therefore, since the scheduling disparity Burton complains of occurred in 2009 and 2010, (Burton Dep. 29:6-22), Burton and Litnianski were not similarly situated employees at the time of the scheduling dispute; and any comparison between Burton and Litnianski's work schedules cannot serve as the foundation for a discrimination claim.  *See Asher v. Riser Foods, Inc.*, No. 92-3357, 1993 WL 94305, at *3 (6th Cir. 1993) (holding that part-time and full-time employees are not similarly situated when alleging discrimination); *Johnson v. Univ. of Iowa*, 431 F.3d 325, 330 (8th Cir. 2005) ("Generally, part-time employees are not similarly situated to full-time employees.") (citation omitted).

11

Litnianski was entitled to different scheduling arrangements than Burton by virtue of her status as a full-time employee. That is, Burton and Litnianski were not similarly situated employees. Having failed to show circumstances giving rise to an inference of discrimination, Burton cannot establish a *prima facie* case of discrimination. There being no dispute of material fact, Kroger is entitled to judgment as a matter of law. Accordingly, summary judgment is appropriate. Fed. R. Civ. P. 56(a).

3.    Termination

Burton's final discrimination claims allege that Kroger terminated her because of her race and sex. These claims are subject to the same burden shifting discussed above. Namely, Burton must establish a *prima facie* case of discrimination. If she does so, Kroger must put forth a legitimate reason for terminating Burton's employment. If Kroger offers such a reason, Burton must establish that the reason offered was merely a pretext for discrimination. *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003). In order to show that Kroger's reason for terminating her was pretext for discrimination, Burton must demonstrate that the reason (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action. *Ayers-Jennings v. Fred's Inc.*, No. 10–6228, 2012 WL 432273, at *3 (6th Cir. Feb. 13, 2012) (citation omitted).

Furthermore, Burton's denial of the facts uncovered by Kroger's investigation will not create a dispute of material fact regarding pretext "as long as [Kroger] has an honest belief in its proffered nondiscriminatory reason." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir.2001). "The key inquiry in assessing

12

whether an employer holds such an honest belief is 'whether the employer made a reasonably informed and considered decision before taking' the complained-of action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998)). Kroger had an honest belief if it "reasonably relied on the particularized facts that were before it at the time the decision was made." *Majewski*, 274 F.3d at 1117. As explained more fully below, the Court will grant summary judgment on these discrimination claims because Burton has failed to create a dispute of material fact as to whether Kroger's proffered reason for firing her was merely a pretext for discrimination.

Even assuming *arguendo* that Burton can establish a *prima facie* case of discrimination, Kroger asserts that it fired Burton because Burton violated Kroger's policy against threatening co-workers, and did so in direct contravention of the Last Chance Agreement Burton signed after her first suspension. (Defs.' Mot. Summ. J. 12.) This clearly constitutes a legitimate reason for terminating Burton's employment. Threatening a co-worker is considered an immediately terminable violation of Kroger's rules. (Defs.' Mot. Summ. J. Ex. 2 at 22.) It also constituted a breach Burton's Last Chance Agreement. (Defs.' Mot. Summ. J. Ex. 13.) Burton acknowledges signing the agreement and admits she understood its terms: she knew that another violation would result in her immediate termination. (Burton Dep. 350:7-12.)

As such, Burton must show that this reason was merely a pretext for unlawful discrimination by demonstrating that the reason either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action. *Ayers-Jennings*

13

*v. Fred's Inc.*, No. 10–6228, 2012 WL 432273, at \*3 (6th Cir. Feb. 13, 2012) (citation omitted).  Burton has made no attempt to meet this burden because she relies exclusively on her own unsubstantiated denial regarding the events that transpired, and she does not attempt to contest the various written accounts of her conduct offered by Kroger.  As such, Kroger is entitled to judgment as a matter of law so long as it had an honest belief in Burton's purported outburst.  *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir.2001).

Here, it is apparent that Kroger had an honest belief in the events leading to Burton's termination because it "reasonably relied on the particularized facts that were before it at the time the decision was made."  *Majewski*, 274 F.3d at 1117.  Indeed, Kroger has proffered four separate witness statements substantiating the facts surrounding Burton's final outburst.  (Defs.' Mot. Summ J. Exs. 16 & 17.)  The manager on duty witnessed the episode complained of, and Burton has done nothing to contest these accounts of her conduct or the investigation that followed beyond repeating her own denial.  Because Kroger made a reasonably informed and considered decision, Kroger had an honest belief in its determination regarding Burton's conduct.  *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007).  As such, Burton cannot solely rely on her own denial to create a dispute of material fact.  *Id.*  Since Burton has not offered any evidence beyond her own denial, there is no dispute of material fact. *Majewski*, 274 F.3d at 1117.  Accordingly, Kroger is entitled to judgment as a matter of law.  Therefore, summary judgment is appropriate.  Fed. R. Civ. P. 56(a).

14

**C.      Negligent Infliction of Emotional Distress Claim**

Burton claims that she suffered negligent infliction of emotional distress because, upon receiving her termination letter, she suffered a wide range of negative emotions, including hopelessness, despair, and extreme anxiety.  (Pl.'s Sec. Am. Compl. ¶ 102.) This claim fails because it falls well short of the negligent infliction of emotional distress tort recognized in Michigan, which requires that Burton witness imminent or actual injury to a member of her immediate family.  *Kogelshatz v. Gendernalik Funeral Home, Inc.*, No. 293977, 2010 WL 4628678, at *4 (Mich. Ct. App. Nov. 16, 2010).  Given the nature of her allegations, dismissal is appropriate because Burton has failed to plead a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

Michigan courts recognize a very limited negligent infliction of emotional distress tort.  To assert such a claim, Burton must show:

> (1) a serious injury is threatened or inflicted <u>on a third person,</u>
> (2) the nature of the injury is such as to cause severe mental
> disturbance to the plaintiff, (3) the shock results in actual
> physical harm, (4) the plaintiff is a member of the third
> person's immediate family, and (5) the plaintiff is present at
> the time the third person is injured or suffers shock fairly
> contemporaneously with that injury.

*Kogelshatz v. Gendernalik Funeral Home, Inc.*, No. 293977, 2010 WL 4628678, at *4 (Mich. Ct. App. Nov. 16, 2010) (emphasis added).  Maintaining a cause of action for negligent infliction of emotional distress requires that Burton allege imminent or actual injury to a member of Burton's immediate family.  Burton, however, merely alleges that she personally suffered emotional distress upon receiving her termination letter.  (Pl.'s Sec. Am. Compl. ¶¶ 100-106.)  Burton has not claimed that she witnessed actual or

imminent injury to a third person, let alone an immediate family member. Therefore, Burton has not pled an actionable negligent infliction of emotional distress claim. The Court's conclusion is underscored by Burton's failure to respond to a similar argument made by Kroger. (Defs.' Mot. Summ. J. 20.) As such, this claim necessarily fails. Fed. R. Civ. P. 12(b)(6).

## D.     Intentional Infliction of Emotional Distress Claim

In addition to claiming negligent infliction of emotional distress, Burton also claims that her termination amounted to intentional infliction of emotional distress. Claims by employees for intentional infliction of emotional distress are preempted by a specific statute, the Worker's Disability Compensation Act, Mich. Comp. Laws § 418.131(1), which circumscribes employee recovery within specific limits. *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 496 (6th Cir. 2002); *Travis v. Dreis & Krump Mfg. Co.*, 453 Mich. 149, 551 N.W.2d 132, 142 (1996).

Specifically, the Worker's Disability Compensation Act ("WDCA") provides the exclusive remedy for injuries caused by employers. Mich. Comp. Laws § 418.131(1) ("The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease."). The only exception to this exclusive remedy provision is for intentional torts, but the statute defines intentional torts narrowly: "An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury." *Id.* The statute goes on to state that an intent to injure exists when an employer has "actual knowledge that an injury was certain to occur and

16

willfully disregard that knowledge." *Id.* Moreover, the question of intent to injure "shall be a question of law for the court." *Id.*

In order to maintain a claim for intentional infliction of emotional distress within the WDCA intentional tort exception, Burton must establish "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999) (citing *Haverbush v. Powelson*, 551 N.W.2d 206 (Mich. Ct. App. 1996)). In Michigan, liability "has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (citing *Doe v. Mills*, 536 N.W.2d 824 (Mich. Ct. App. 1995)). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe v. Mills*, 536 N.W.2d 824, 833 (Mich. Ct. App. 1995).

Summary judgment in Kroger's favor is appropriate here because Burton has failed to establish the outrageousness required for intentional infliction of emotional distress. Burton repeatedly refers to her co-workers' "harassment" throughout her pleadings; however, during her deposition, she was hard pressed to name any conduct that would rise to the level of atrocious or utterly intolerable. In fact, the circumstances she describes seem largely innocuous. For example, many of Burton's harassment claims focus on what she perceives as invasions of space. (Burton Dep. 61:8-12.) When pressed to describe these instances of close proximity, Burton generally described situations where someone would either walk by her (Burton Dep. 61:17-66:12), work in an adjacent

17

checkout lane (Burton Dep. 207:23-214:14), or merely enter the break room while Burton was there (Burton Dep. 188:14-18; 191:7-13.).  When asked why she thought co-workers wanted to "provoke" or "harass" her, Burton had no answer.  (Burton Dep. 64:4-7; 66:18-19; 67:11-15.)  Burton claims co-workers would walk by her "in an offensive way," but without meaningfully describing what such a walk entails.  (Burton Dep. 67:16-25.)  Burton also claims that co-workers were gossiping about her, but had no reason for that belief other than the observation that they were laughing amongst themselves in her line of sight; she admits to assuming conclusions about her co-workers' conduct without any evidence in support thereof.  (Burton Dep. 190:10-191:6.)

Nothing complained of by Burton rises to the level of atrociousness required to maintain an intentional infliction of emotional distress claim.  *Graham v. Ford*, 604 N.W.2d at 716.  Rather, it seems Burton has, at best, suffered a series of annoyances, insults, or indignities.  *Doe v. Mills*, 536 N.W.2d at 833.  Such allegations do not suffice for an intentional infliction of emotional distress claim.  *Id.*  Even viewing the evidence in the light most favorable to Burton, as the Court must, the conduct alleged was in no way extreme and outrageous.  Accordingly, there being no dispute of material fact, Kroger is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

**E.     Breach of Implied Contract Claim**

Burton also claims that her termination breached an implied contract whereby Burton could only lose her job for "good/just cause."  (Pl.'s Sec. Am. Compl. ¶ 118.)  However, Burton's employment was indisputably governed by the CBA in existence between Kroger and Burton's union.  (Defs.' Mot. Summ. J. Ex. 2.)  Michigan law on

point is abundantly clear: "An implied contract cannot be enforced where the parties have made an express contract covering the same subject matter." *Scholz v. Montgomery Ward & Co., Inc.*, 468 N.W.2d 845, 849 (Mich. 1991). Therefore, since Burton's employment was governed by an express contract -- which included provisions on termination -- Burton cannot claim a wrongful discharge under an implied contract. *Id.* There is no dispute of fact on this matter, and Kroger is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

**F.     Failure to Accommodate Claims**

Burton asserts two claims against Kroger based on Kroger's purported failure to accommodate her bipolar disorder: one claim under the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws §§ 37.1103 *et seq.*, and the other under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* Under both statutes, a failure to accommodate claim requires showing (1) a disability, (2) qualification for the job with or without accommodation, and (3) the denial of a reasonable accommodation. *Penn v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir. 1997); *Peden v. City of Detroit*, 680 N.W.2d 857, 862-64 (Mich. 2004). Further, in order to allege a failure to accommodate under Michigan law, the employee must seek an accommodation in writing. Mich. Comp. Laws § 37.1210(18).[3] Under the ADA, the disabled individual bears the initial burden of proposing an accommodation and showing

---

[3] Section 37.1210(18) provides in full: "A person with a disability may allege a violation against a person regarding a failure to accommodate under this article only if the person with a disability notifies the person in writing of the need for accommodation within 182 days after the date the person with a disability knew or reasonably should have known that an accommodation was needed."

its reasonableness. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010) ("If a disabled employee requires an accommodation, the employee is saddled with the burden of proposing an accommodation and proving that it is reasonable.") (citing *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996)).

Dismissal is appropriate as to Burton's state law failure to accommodate claim because Burton has neither alleged nor demonstrated that she made a written request to Kroger for an accommodation. Burton did request multiple medical leaves -- presumably in writing -- but Burton admits that Kroger granted each such request, and that she returned to work "no questions asked" at the end of each leave. (Burton Dep. 344:23-345:20.) Burton's leave periods thus cannot form the basis of Burton's claim. Burton has not suggested that she requested any other accommodations or that she requested accommodations in writing. In fact, it appears that Burton did not request any further accommodations from Kroger whatsoever, a point discussed in more detail below. Accordingly, dismissal is appropriate. Fed. R. Civ. P. 12(b)(6).

The Court will dismiss Burton's ADA claim because Burton did not request accommodations from Kroger. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010) (stating that it is the employee's obligation to request an accommodation). Burton's complaint alleges a failure to accommodate under the ADA, but without mentioning a single specific accommodation purportedly requested. Her response brief lists two possible accommodations Kroger could have provided, but without suggesting or demonstrating that Burton in fact requested these accommodations. They are merely presented as conceivable accommodations. (Pl.'s Resp. Mot. Summ. J. 16.) It thus

20

appears that Burton did not request any accommodations from Kroger; and an ADA claim cannot stand on *post hoc*, theoretical possibilities. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010).

This conclusion is confirmed by Burton's deposition testimony. Kroger's counsel asked Burton whether she had ever sought an accommodation from Kroger or store management. (Burton Dep. 344:3-5.) In response, Burton said, "I don't need an accommodation." (Burton Dep. 344:6.) Furthermore, while Burton has said that she sought a transfer to another store as an accommodation, during her deposition, Burton clarified that she only ever broached the topic with her union. (Burton Dep. 355:2-17.) To maintain her claim, the ADA requires that Burton actually seek a reasonable accommodation, and that she seek an accommodation from Kroger, not her union. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). Given the parties' submissions, Burton has not pled a failure to accommodate claim upon which relief can be granted. Accordingly, dismissal is appropriate. Fed. R. Civ. P. 12(b)(6).

## G.   Retaliation Claims

Finally, Burton claims that Kroger retaliated against her for making a charge of disability discrimination in June 2010. These claims arise under the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws §§ 37.1103 *et seq.*, and the ADA, 42 U.S.C. §§ 12101 *et seq.* While the elements of a retaliation claim vary slightly between the two statutes,[4] both require that Burton engage in a protected activity prior to

---

[4] A *prima facie* case under the ADA requires showing (1) engagement in a protected activity, (2) an adverse employment action, and (3) a causal connection between the

Kroger taking an adverse employment action. This comports with common sense given that the nature of the claim is retaliation for engaging in protected conduct; an employer cannot logically be said to have retaliated against an employee if the protected activity occurs after the adverse employment action.

The Court will grant summary judgment on Burton's retaliation claims because Burton did not engage in protected activity until after her termination. According to Burton, the protected activity she engaged in was filing a charge of disability discrimination on June 7, 2010. (Pl.'s Sec. Am. Compl. ¶ 66.) However, Burton was fired on April 26, 2010. (*Id.* ¶ 62.) Accordingly, Burton's claim necessarily fails because Kroger could not have retaliated against her for filing the discrimination charge. Burton did not engage in a protected activity while employed by Kroger. It follows that Kroger could not have possibly retaliated against Burton for filing her discrimination claim because Kroger had already taken the adverse action complained of by the time Burton filed her complaint. The Court's conclusion is confirmed by Burton's failure to address this issue in her response brief, despite Kroger's argumentation on point. (Defs.' Mot. Summ. J. 18-20.) There is thus no dispute of material fact, and Kroger is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

---

protected activity and the adverse employment action. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). A *prima facie* case under the Michigan Persons with Disabilities Civil Rights Act requires showing (1) engagement in a protected activity, (2) that was known to the employer, (3) an adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action. *Mitan v. Neiman Marcus*, 613 N.W.2d 415, 416 (Mich. Ct. App. 2000).

# IV. CONCLUSION

For the reasons set forth in this opinion, the Court holds that dismissal is appropriate as to Burton's claims for failure to promote, negligent infliction of emotional distress, and failure to accommodate; and summary judgment is appropriate as to Burton's remaining claims.  Therefore,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment [Dkt. #11] is GRANTED.


s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated: April 20, 2012


I hereby certify that a copy of the foregoing document was served upon counsel of record on April 20, 2012, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137